IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) 8:11CV304 ) ) |
| v. | ) ORDER ) |
| CLAY CENTER CHRISTIAN CHURCH, et al., | ) ) ) |
| Defendants. | ) ) |

This matter is before the court on the defendants' Motion to Compel (Filing No. 65). The defendants, Cheryl S. Green, on behalf of herself and as representative of the estate of John Green (collectively the Greens), seek a court order compelling the plaintiff, Church Mutual Insurance Company (Church Mutual), to fully and completely respond to Defendants' Second Set of Requests for Production of Documents No. 21 and provide documents in their original, unredacted form. Church Mutual contends the documents are subject to privilege. Attorney Jerald Rauterkus (Mr. Rauterkus), an interested party, also contends the documents are subject to privilege.

The Greens filed a brief (Filing No. 66) and an index of evidence (Filing No. 67) in support of the motion. Mr. Rauterkus filed a brief (Filing No. 72) and an index of evidence (Filing No. 71) in opposition to the motion to compel. Church Mutual filed a brief (Filing No. 73) in opposition to the motion to compel. The Greens did not file a brief in reply. The defendant, Clay Center Christian Church (Clay Center), did not participate in the briefing of this motion.

BACKGROUND

This action relates to injuries the Greens sustained as a result of carbon monoxide poisoning. **See** Filing No. 1 - Complaint. On November 19, 2009, the Greens lived at 102 East Thurber, Clay Center, Nebraska (the premises). *Id.* The owner, Clay Center, permitted the Greens to live in the premises. *Id.* Cheryl Green suffered bodily injuries and

John Green died due to carbon monoxide exposure released on the premises on November 19, 2009. *Id.* The Greens asserted Clay Center was liable for the Greens' injuries. *Id.* The Greens demanded coverage under two insurance policies Church Mutual issued to Clay Center. *Id.*

On September 7, 2011, Church Mutual brought this action seeking a determination of the parties' rights, duties, and obligations under the insurance policies issued to Clay Center.  See Filing No. 1 - Complaint.  Church Mutual seeks a declaratory judgment that Church Mutual has no duty to defend or indemnify Clay Center with respect the Greens' claims. *Id.* Church Mutual also seeks a declaration the insurance policies do not provide coverage for the Greens' claims because Clay Center breached the insuring agreements and conditions, which are a precondition to coverage under the insurance policies. **See** Filing No. 48 - Supplement to Complaint.

The Greens filed an answer on December 12, 2011, and asserted Church Mutual failed to reserve its rights under the insurance policies. **See** Filing No. 19 - Answer. Additionally, the Greens argue Church Mutual's claims are barred by the doctrines of estoppel, waiver, misrepresentation, nondisclosure, and by the passage of time and laches. *Id.* The Greens argue Church Mutual has a duty to defend and indemnify the Greens' claims. *Id.*

On February 16, 2012, the Greens initiated lawsuits against Clay Center in the District Court of Clay County, Nebraska. **See** Filing No. 48 - Supplement to Complaint; Filing No. 48-1 - Ex. F and G - Greens' Complaints.  Also on February 16, 2012, the Greens and Clay Center filed a Joint Stipulation for Order of Judgment in each lawsuit. **See** Filing No. 48-1 - Ex. H and I - Joint Stipulation for Order of Judgment.  Further, on February 16, 2012, an Order of Judgment was entered in connection with the Greens' lawsuits against Clay Center.  **See** Filing No. 48-1 - Ex. J and K - Order for Judgment. Lastly, on February 16, 2012, the Greens and Clay Center entered into a Consent Agreement wherein Clay Center assigned to the Greens any and all rights it has pursuant to the Church Mutual insurance policies. **See** Filing No. 48-1 - Ex. E - Consent Agreement. Thereafter, on April 4, 2012, Clay Center waived the attorney-client privilege as it pertained to Mr. Rauterkus.  **See** Filing No. 67-3 - Ex. B - Waiver Email.

On March 9, 2012, the Greens sent a Second Set of Requests for Production of Documents to Church Mutual requesting the claims file for the death of John Green and the injuries to Cheryl Green.  **See** Filing No. 66 - Brief p. 1.  In response, on April 11, 2012, Church Mutual produced redacted written communications between Mr. Rauterkus and Brad Bollman, Dwayne Wolf, and the Clay County Sheriff.  *Id.*  However, Church Mutual objected to Request No. 21 on the grounds the requested information was "protected by the attorney-client privilege or subject to work product protection."  **See** Filing No. 67-2 - Ex. 2 - Church Mutual's Response to the Greens' Second Set of Requests for Production of Documents.  The Greens show counsel for the parties conferred on May 21, 2012, to resolve the dispute but were unable to reach a solution.  *Id.* at 1.

## ANALYSIS

**A.    Relevance**

The Greens argue the discovery at issue is relevant because Mr. Rauterkus' documents contain information necessary to determine whether he defended Clay Center against potential liability for the Greens' insurance claims.  **See** Filing No. 66 - Brief p. 6.  Whether Mr. Rauterkus defended Clay Center is critical, the Greens argue, because the assumption of defense of an insured is an element of the Greens' affirmative defense that Church Mutual's claims are barred by the doctrine of estoppel.  *Id.*

Church Mutual argues the documents Mr. Rauterkus prepared are not relevant to the Greens' estoppel defense because Mr. Rauterkus "had no responsibility over any insurance coverage matters."  **See** Filing No. 73 - Church Mutual Brief p. 2, 13-14.  Church Mutual states Mr. Rauterkus was employed to conduct a cause and origin investigation, gather and preserve evidence, and generally assist Church Mutual.  *Id.* at 13.  Church Mutual argues Mr. Rauterkus' documents relate to the cause and origin of the November 19, 2009, incident and not to an alleged defense.  *Id.* at 13-14.  In support of its argument, Church Mutual cited Mr. Rauterkus' deposition wherein he stated he does not do insurance coverage work, did not read the insurance policies, and did not communicate with Church Mutual or Clay Center with regard to coverage.  See Filing No. 67-4 - Ex. 4 - Rauterkus Depo. p. 15:21-23, 64:15-20; 108:24-109:5, 121:2-22, 122:11-12, 123:12-18.  Therefore,

because Mr. Rauterkus did not handle insurance coverage issues, Church Mutual argues the documents at issue are not relevant to the Greens' proposed estoppel defense. *Id.*

"[T]he discovery rules mandate a liberality in the scope of discoverable material." *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000); **see** *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes."). The scope of permissible discovery is broad and parties may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents . . . ." Fed. R. Civ. P. 26(b)(1). However, the scope is not unlimited and the court "does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Once the requesting party satisfies the threshold relevance burden, "[t]he party resisting production bears the burden of establishing lack of relevancy or undue burden." *St. Paul Reinsurance Co.*, 198 F.R.D. at 511. The resisting party must demonstrate "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure . . . ." *St. Paul Reinsurance Co.*, 198 F.R.D. at 511.

The Greens provide only conclusory statements that Mr. Rauterkus' documents are relevant to this case. The Greens argue the documents are "critical in determining what [Mr. Rauterkus] was doing for the Church." **See** Filing No. 66 - Brief p. 6. However, the Greens fail to explain how the disputed documents are relevant to the Greens' estoppel defense. In fact, the evidence presented discredits the Greens' statement of relevance.

Information provided during discovery and the circumstances surrounding Mr. Rauterkus' representation demonstrates the disputed documents are not relevant. On November 19, 2009, Cheryl Green suffered bodily injuries and John Green died from

carbon monoxide poisoning. On November 20, 2009, Church Mutual hired Mr. Rauterkus. The Greens filed an insurance claim against Clay Center on August 19, 2011. Shortly thereafter, Mr. Rauterkus' employment with Church Mutual ended. Mr. Rauterkus testified at his deposition the scope of his employment was to perform a cause and origin investigation rather than render opinions with regard to insurance coverage issues. **See** Filing No. 67-4 - Ex. 4 - Rauterkus Depo. p. 24:7-8, 108:24-109:5. The Greens have not presented any evidence Mr. Rauterkus defended Church Mutual or Clay Center before or after the Greens filed an insurance claim.

The Greens failed to show how the disputed documents reasonably bear upon the Greens' estoppel defense. The evidence already provided during discovery shows Church Mutual hired Mr. Rauterkus to investigate the November 19, 2009, incident, not to defend Church Mutual or Clay Center. The Greens have not satisfied the threshold relevance requirement for the discovery at issue in this motion. Although the court finds the Greens have not demonstrated the relevance of the disputed documents, the court will address the work product doctrine issue.

### B.   Work Product Doctrine

The Greens argue Clay Center waived the attorney-client or work product doctrine privileges. **See** Filing No. 66 - Brief p. 5. The Greens argue, as the assignees of Clay Center's rights, and due to the waiver, the Greens are entitled to the requested documents. *Id.* Therefore, the Greens argue neither Mr. Rauterkus nor Church Mutual can rely upon the work product doctrine to resist disclosing unredacted versions of the requested documents. *Id.* at 7. Additionally, the Greens argue the documents sought are critical because the documents contain information relevant to the determination of whether Mr. Rauterkus defended Clay Center against potential liability for the Greens' insurance claims. *Id.* at 6. Lastly, the Greens argue Church Mutual cannot simultaneously assert Mr. Rauterkus performed work in anticipation of litigation but did not defend the client. *Id.* at 7.

Mr. Rauterkus and Church Mutual acknowledge the attorney-client privilege was waived but argue the Greens fail to distinguish between the attorney-client privilege and

5

the work product doctrine.  **See** Filing Nos. 72 - Rauterkus Brief p. 3; 73 - Church Mutual Brief p. 1.  Mr. Rauterkus and Church Mutual argue the documents subject to dispute are protected under the work product doctrine.  **See** Filing Nos. 72 - Rauterkus Brief p. 3; 73 - Church Mutual Brief p. 1, 6.  Further, Mr. Rauterkus argues the documents are opinion work product, which maintains near absolute immunity.  **See** Filing No. 72  - Rauterkus Brief p. 5.  Church Mutual states that because Clay Center waived the attorney-client privilege, Church Mutual produced portions of the Greens' insurance claim file that would otherwise have been exempt from discovery under the attorney-client privilege.  **See** Filing No. 73 - Church Mutual Brief p. 3.  However, Church Mutual did not produce portions of the Greens' insurance claim file the work product doctrine protects.  *Id.*  Additionally, Church Mutual argues the Greens failed to meet their heavy burden of showing substantial need or rare and extraordinary circumstances to obtain the requested documents.  *Id.*

"The work product privilege is distinct from and broader than the attorney-client privilege."  *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) (internal citation omitted).  The work-product doctrine was established by *Hickman v. Taylor*, 329 U.S. 495 (1947), and is now codified in Fed. R. Civ. P. 26(b)(3):

> (A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
> > (I) they are otherwise discoverable under Rule 26(b)(1); and
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).  The privilege is held and may be asserted by the attorney and the client.  *In re Green Grand Jury Proceedings*, 492 F.3d at 980.  A person opposing

production of documents based on privilege has the burden of establishing the privilege applies.  See Fed. R. Civ. P. 26(b)(5).

"There is a distinction between precautionary documents developed in the ordinary course of business for the remote prospect of litigation and documents prepared because some articulable claim, likely to lead to litigation, [has] arisen." Id. (internal quotation omitted) (alteration in original).  Determining whether documents were prepared in anticipation of litigation is a fact question governed by federal law. Baker, 209 F.3d at 1053.

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced.  Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.  But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.

Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir. 1977).  However, "the work product rule does not come into play merely because there is a remote prospect of future litigation." Diversified Indus., Inc., 572 F.2d at 604.

Church Mutual already provided documents that would otherwise have been exempt from discovery under the attorney-client privilege.  Church Mutual indicates no documents exist that would be shielded from protection by the attorney-client privilege but not the work product doctrine.  Therefore, the court need not determine the applicability of the attorney-client privilege.  The court will address whether the work product doctrine protects Mr. Rauterkus' documents in dispute.

Church Mutual and Mr. Rauterkus failed to show the disputed documents were prepared in "anticipation of litigation" as the phrase is used in Rule 26(b)(3).  Mr. Rauterkus' deposition testimony elucidates whether the documents were prepared because of the prospect of litigation. Mr. Rauterkus testified, "[litigation] was one possibility at the time.  There were other possibilities.  There was a possibility that the – that there might be a lawsuit with Mrs. Green depending on where the facts led." See Filing No. 67-4 - Ex. 4 - Rauterkus Depo. p. 63:8-14.  Further, Mr. Rauterkus testified,

> My conversation with my clients at the Church had always led me to believe that Mrs. Green would not file a lawsuit . . . . [T]his was an extremely close relationship between Mrs. Green and the Church, and I knew that she wanted to avoid filing a lawsuit if a resolution could be worked out. And so while I would plan as always to protect the Church from litigation, I did not believe Mrs. Green would take the step to file a lawsuit against her own church.

See *id.* at 87: 7-9, 19-25. Additionally, Mr. Rauterkus testified he was hired to do a cause and origin investigation and was not hired in connection with any insurance coverage issues, did not read the insurance policies, and never communicated with Church Mutual or Clay Center with regard to insurance coverage or the pollution exclusion. See *id.* at 15:21-23; 24:8; 64:15-20; 108:24-109:5; 121:2-22; 122:11-12; 123:12-18. Neither Church Mutual nor Mr. Rauterkus demonstrated his investigation was conducted because of the prospect of litigation. Further, neither Church Mutual nor Mr. Rauterkus demonstrated the documents contain mental impressions, conclusions, opinions, or legal theories. Mr. Rauterkus acknowledged at his deposition that "there's always the potential of litigation." See *id.* at 43:4. The remote prospect of litigation alone is not sufficient to evoke protection under the work product doctrine. See *Diversified Indus., Inc.*, 572 F.2d at 604.

The court also notes from the description of Mr. Rauterkus' scope of employment, he performed an investigation that is in the ordinary course of business for insurance companies. See *St. Paul Reinsurance Co., Ltd.*, 197 F.R.D. at 630 (stating it is the insurer's business to investigate claims); see also *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986) (holding work product immunity did not apply, in part, because "immediately upon receiving notice of the [incident], [the insurer decided] to employ attorneys to fulfill its ordinary business function of claims investigation."); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S. D. Ind. 1991) ("[A] document or thing produced or used by an insurer to evaluate an insured's claim in order to arrive at a claims decision in the ordinary and regular course of business is not work product regardless of the fact that it was produced after litigation was reasonably anticipated."). Work product immunity does not apply to documents prepared in the ordinary course of business. See *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987).

Church Mutual and Mr. Rauterkus failed to satisfy their burden to demonstrate the requested documents were created "**because** of the prospect of litigation." *Simon*, 816 F.2d at 401 (emphasis added). Despite the court's finding the work product doctrine is inapplicable, the Greens are not entitled to discovery of Mr. Rauterkus' documents. Although the scope of permissible discovery is construed broadly, the Greens have not demonstrated the threshold requirement of relevancy necessary to obtain the discovery at issue in this motion. Accordingly;

**IT IS ORDERED:**

The defendant's Motion to Compel (Filing No. 65) is denied.

Dated this 30th day of July, 2012.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.