IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHURCH MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>CLAY CENTER CHRISTIAN CHURCH, CHERYL S. GREEN, and CHERYL S. GREEN, as Personal Representative of the Estate of John R. Green,<br><br>Defendants. | **8:11CV304**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on plaintiff Church Mutual Insurance Company's motion in limine, Filing No. 68; Church Mutual Insurance Company's motion for summary judgment, Filing No. 79; and objection by Cheryl Green and the Estate of John Green (hereinafter "Greens"), Filing No. 82, to the magistrate judge's order, Filing No. 78, denying the defendants' Greens' motion to compel (Filing No. 65).[1] This is a declaratory judgment action brought by plaintiff Church Mutual Insurance Company regarding the interpretation of the "absolute pollution exclusion" included in the insurance policies issued to defendant Clay Center Christian Church. The Greens signed a release with the defendant Clay Center Christian Church, wherein the Greens would not recover from the church. The question this court must determine in this action is whether the exclusion applies to bodily injury resulting from exposure to carbon monoxide at the insured premises.

[1] The court has determined that the motion for summary judgment is granted. Accordingly, the court need not reach the merits of the motion to compel. In any event, the court carefully reviewed the motion, order of the magistrate judge, and the objections. The court finds the objections are without merit and would affirm the magistrate judge as he is correct in both his factual and legal analysis.

**I. Background**

On or about November 19, 2009, Cheryl and John Green, employees of defendant Clay Center Christian Church, were exposed to carbon monoxide released form the heating system in a house owned by the Clay Center Christian Church. John Green died and Cheryl Green suffered significant injuries from carbon monoxide poisoning. The Greens made claims against the Christian Church. Attorney Scott Grafton initially represented the interests of the Greens. The last inspection of the heating unit occurred in April, 2010, and no other significant developments occurred for the next eleven months, until March of 2011. Thereafter, the Greens retained attorney Peter Wegman to represent their claims. In August 2011, the Greens sent a demand letter. On September 8, 2011, Church Mutual reserved rights and identified the pollution exclusion discussed below as the basis for precluding recovery. The Greens filed suit in state court, a consent judgment was entered in favor of the Greens, and the Clay Center Christian Church assigned all of its rights to the Greens. The Greens released the church and its assets from any legal exposure.

Church Mutual Insurance contends that the exclusion in the primary policy applies and precludes payment in this case. The exclusion in the primary policy, number 0246436-02-072841, states:

2. Exclusions.

This insurance does not apply to:

. . . .

g. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants:

> (a) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

Filing No. 1, at ID # 87.

> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

Filing No. 1, at ID # 88. The umbrella policy, 0246436-81-072439, has the same exclusion.

## II. Motion by plaintiff Church Mutual Insurance to exclude the expert testimony and report of Gerard S. Harbison, Filing No. 68[2]

The Greens listed Dr. Gerard S. Harbison as an expert witness in this case. They seek to have him testify regarding the meaning of the terms appearing in the pollution exclusion in Church Mutual's insurance policies. Church Mutual Insurance asks this court to exclude this testimony pursuant to Fed. R. Evid. 702, because such interpretations are questions of law for the court, and not fact for the jury. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

[2] The Greens argue that this motion is premature, as the court has not yet decided the summary judgment motion pending in this case. However, the Greens rely on Mr. Harbison's opinions in their summary judgment, so the court felt inclined to first review the motion to exclude his testimony.

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Eighth Circuit has stated that pursuant to Rule 702:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Prods., Inc*., 270 F.3d 681, 686 (8th Cir. 2001) (citations omitted). Additionally, Church Mutual Insurance contends that Dr. Harbison is a chemist and is a chemistry professor at the University of Nebraska-Lincoln, is not an insurance expert, and is thus not qualified to testify as rendered.

Dr. Harbison, according to Church Mutual Insurance, will testify as to the meaning of "irritant" and "contaminant" in the absolute pollution exclusion, which again, Church Mutual Insurance argues, is a legal question. Church Mutual Insurance contends that application of the exclusion depends, in part, on whether carbon monoxide is defined as a "pollutant" which is defined under the policies above as an irritant or contaminant. Church Mutual Insurance contends that Dr. Harbison merely wants to give a dictionary definition of "contaminant" and a definition of "irritant" from the U.S. Occupational Safety and Health Administration, and he does not attempt to explain any trade or technical names. Further, Church Mutual Insurance contends that the pollution exclusion, and how it applies to carbon monoxide, is a question of law. *See Cincinnati Ins. Co. v. Becker Warehouse, Inc*., 635 N.W.2d 112, 117-18, 120, 122 (Neb. 2001). Further, and more importantly, the Nebraska Supreme Court has already

accepted carbon monoxide as an irritant or contaminant, and found the pollution exclusion unambiguous, contends Church Mutual Insurance. *Harleysville Ins. Grp. v. Omaha Gas Appliance Co*., 772 N.W.2d 88, 95-96 (Neb. 2009).

The Greens disagree with the allegations made about Dr. Harbison. They argue that the primary purpose of his report and testimony is to determine if carbon monoxide is an irritant or a contaminant, based on his expertise as a chemist, using the definitions of the U.S. Department of Health and Human Services and the Center for Disease Control and the dictionary. The Greens argue that the policy language dealing with irritant and contaminant are ambiguous.[3] If the court determines that no ambiguity exists, the Greens intend to use Dr. Harbison and his report to show that carbon monoxide in its gaseous form (which is the form relevant in this case) does not meet the definition of "irritant" or "contaminant." The Greens contend that the chemical characteristics of carbon monoxide remain in dispute and that is an issue of factual dispute.

The court agrees that interpretation is a question of law for the court. *Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co., Inc.*, 195 F.3d 368, 375 (8th Cir. 1999); *see also Harleysville Ins. Grp*., 772 N.W.2d 92. Further, the court must also determine if the contract is ambiguous. *Cincinnati Ins. Co*., 635 N.W. 2d at 118. Federal Rule of Evidence 702 governs the admissibility of expert testimony. The court is also cognizant of the fact that while federal law governs admissibility, state law

---

[3] The Greens argue that the policy is both ambiguous and unambiguous. The court for purposes of this motion will consider both arguments, as it makes no difference to the outcome of this motion.

governs the analysis of an insurance policy. *See Home Ins. Co. v. Aetna Ins. Co*., 236 F.3d 927, 929 (8th Cir. 2001).

Generally, Nebraska law requires the court to interpret the terms of a contract by analyzing their plain and ordinary meaning. *Daehnke v. Neb. Dep't of Soc. Servs.,* 557 N.W.2d 17, 21 (Neb. 1996). Where the terms are ambiguous, however, an expert can be used to explain inconsistencies. *See Coppi v. West Am. Ins. Co.*, 524 N.W.2d 804, 815-16 (Neb. 1994), overruled on other grounds by *D & S Realty, Inc. v. Markel Ins. Co*., 789 N.W.2d 1 (Neb. 2010).

The court notes that the policy language above is identical to the policy language in *Cincinnati Ins. Co*., 635 N.W. 2d at 119. The Nebraska Supreme Court concluded in Cincinnati that the pollution exclusion is unambiguous and extends beyond the traditional environmental damage. The court concluded that as a matter of law that the release of xylene fumes in the claimant's warehouse clearly fell under this broad exclusion. *Id*. at 120. Further, the Supreme Court then determined that xylene contamination constituted pollution, and thus the pollution exclusion precluded coverage under the "care, custody and control" provision. *Id*. at 123. Finally, the Nebraska Supreme Court determined that this same exclusion applies to carbon monoxide poisoning. *Harleysville Ins. Grp*., 772 N.W.2d 88. Nebraska law is very clear that this exclusion is not ambiguous, that it is a broad exclusion, and that carbon monoxide meets the definition of the exclusion. Accordingly, the court finds the motion to exclude the testimony of Dr. Harbison on this issue is granted.

## III. Church Mutual Insurance's Motion for Summary Judgment, Filing No. 79

### A. Merits

Church Mutual Insurance moves for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that the primary and umbrella policies do not provide coverage for this carbon monoxide incident, and that there is no duty to defend or indemnify defendant Clay Center Christian Church.

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id*. ( quoting *Celotex*, 477 U.S. at 324). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—

whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Id*. at 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id*. at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id*. "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

The court has already concluded above that the exclusion is not ambiguous, and that the Nebraska Supreme Court addressed the pollution exclusion and found it excludes bodily injury caused by indoor pollutants such as carbon monoxide and xylene. *Harleysville Ins. Grp.*, 772 N.W.2d 88; *Cincinnati Insurance Co*., 635 N.W.2d at 112; *see also Ferrell v. State Farm Ins. Co.*, 2003 WL 21058165, at *4-6 (Neb. Ct. App. May 13, 2003) (finding that mercury present in an apartment met the definition of

pollutant). The court has already determined that this pollution exclusion applies, and thus, the motion for summary judgment is granted in this regard.

### B. Estoppel[4]

The Greens next contend that Church Mutual Insurance should be estopped from arguing the application of the exclusion in this case.[5] The general elements of estoppel are:

> As to [the] party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts; as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Chappelear v. Grange & Farmers Ins. Co. of Blair, Neb*., 210 N.W.2d 921, 924 (Neb. 1973) (*quoting Pester v. Am. Family Mut. Ins. Co.,* 186 N.W.2d 711, 714 (Neb. 1971)). The party asserting estoppel must establish each element by clear and convincing evidence. *Double K, Inc. v. Scottsdale Ins. Co*., 515 N.W.2d 416, 422 (Neb. 1994). Further, a party cannot generally allege estoppel to create coverage under an insurance policy. *First United*, 496 N.W.2d 480. Church Mutual Insurance argues there is no evidence that supports any of these elements. However, an exception exists as to

[4] Church Mutual Insurance first asserts that the Greens have no standing to raise this argument, as only a party to the agreement has standing. *Armstrong v. Armstrong*, 218 N.W.2d 541, 544 (Neb. 1974). The court need not address this issue, as the Greens have failed to establish a claim of estoppel in any event.

[5] The Greens also allege waiver as an affirmative defense, but it is based primarily on the same facts as is the estoppel claim. For the same reasons, it is likewise without merit.

estoppel when an insurance company assumes the defense of an action against its insured, where there is no reservation of rights. *Id*. The Greens argue that this court must use the three-factor test set forth in *First United.* These elements are:

1. The insurer had sufficient knowledge of the facts or circumstances indicating non-coverage;

2. The insurer assumed or continued defense of the insured without obtaining an effective reservation of rights agreement; and

3. The insured suffered some type of harm.

*First United*, 496 N.W.2d at 480. The court will first address these three factors.

The parties have a number of disputed assertions, but the court finds most of them are not material to the issue of estoppel. The court finds the evidence as to the first issue, knowledge indicating non-coverage, is equivocal. The Greens contend that Church Mutual Insurance meets the first factor, as it had knowledge the first day after the personal injuries of carbon monoxide in the home. There are emails discussing the same and, according to the Greens, precautionary reserves were established.

Church Mutual Insurance contends it did not have sufficient knowledge of the facts indicating non-coverage. Church Mutual Insurance contends that Jerry Rauterkus, Church Mutual Insurance's attorney, repeatedly told the Clay Center Christian Church's representatives that he had not been retained and could not handle the insurance coverage matters. Filing No. 81-2, Elder Lyle VonSpreckelsen Dep. 25:13-26:16, 30:4-6. Further, Church Mutual Insurance argues that since the Greens released Clay Center Christian Church from any legal exposure, there can be no prejudice to the Church. The assets of the church have never been at risk. In fact, argues Church Mutual Insurance, it did not know until August 19, 2011, whether the Greens had

pursued workers' compensation claims and whether they would bring any liability claims.

However, the Greens argue there was a letter on March 18, 2011, from Greens' attorney, Peter Wegman, indicating the Greens were "pursuing a wrongful death claim" and a personal injury claim. Rauterkus responded with an April 18, 2011, letter stating:

> I take it from your letter that you are essentially asking for my client to waive the affirmative defense associated with the exclusive remedy provided in workers' compensation. At this point in time, I have advised my client not to waive the "bunkhouse rule" as an affirmative defense or any other affirmative defenses.

Filing No. 81-6, Ex . J, at CM000251, ID # 1086.

In summary, with regard to this issue, Church Mutual argues:

> Here, Church Mutual never defended the Church in a lawsuit or had complete control of a claim; did not tell the Church there was coverage; the Church made its own side arrangements with the Greens; the Church has never had liability exposure, except for its insurance proceeds; and the Church has admitted there have been no adverse effects on it. There are no inequitable consequences that would result if the Court does not apply estoppel and the exception. There is no persuasive argument for applying them. Moreover, applying estoppel would discourage insurance companies from helping an insured with an investigation when it is not required to do so, for fear that when a claim was actually made, it would be estopped from relying on clear exclusions from coverage.

Filing No. 89, Church Mutual Insurance's brief, at 28.

Second, the Greens argue that Church Mutual Insurance assumed or continued a defense of Clay Center Christian Church without obtaining an effective reservation of rights. Jerald Rauterkus of Erickson Sederstrom, LLC, was hired the day after the poisonings to represent Clay Center Christian Church. Church Mutual Insurance contends he was hired to deal with evidentiary matters, conduct a cause and origin investigation, keep the church apprised of the situation, and generally assist the church.

The Greens contend that a reasonable inference can be drawn that Rauterkus was acting as defense counsel for Clay Center Christian Church immediately following the poisoning. The Greens agree there was no written engagement between Rauterkus and the church. However, there is no document, assert the Greens, that the attorney was retained for only these limited purposes. The Greens argue that members of Clay Center Christian Church, in particular Doug Livgin and Lyle VonSpreckelsen, church elders, state that Rauterkus made statements about how these types of cases usually end in a settlement and he gave a money range regarding the same. Rauterkus allegedly advised the church elders not to speak to Cheryl Green regarding this incident, and he also conducted legal research for the church, argue the Greens.

Further, the Greens state that Rauterkus reviewed coverage claim questions regarding the Green family. In addition, Rauterkus also had correspondence and discussions with attorneys for the Greens regarding the poisoning, in particular Peter Wegman, the Greens' attorney. Church Mutual's reservation of rights letter, sent on September 8, 2011, stated: "Church Mutual has previously appointed Jerry Rauterkus of the Erickson Sederstrom law firm to represent Clay Center Christian Church in connection with these claims. For now, Church Mutual will continue to provide a defense with respect to this matter. But Mr. Rauterkus cannot advise the Church with respect to the insurance coverage matters. Thus, the Church may want to obtain separate legal counsel for advice in this regard." Filing No. 81-7, Ex. N, at page 9, ID #1140. In fact, after the Greens made a claim on August 19, 2011, Clay Center Christian Church retained its own attorney, Jefferson Downing.

Church Mutual Insurance argues that the Greens mischaracterize the evidence relating to Rauterkus. First, Church Mutual Insurance contends that Rauterkus oversaw the investigation, but he did not offer any type of defense to the lawsuit. Church Mutual Insurance agrees that Rauterkus gave advice on whether the church could recover the cost of replacing the heating system and whether the policy would pay for Ms. Green's medical expenses. However, these were non-liability issues, having nothing to do with the liability claim, argues Church Mutual Insurance. Further, Church Mutual Insurance contends that doing legal research and investigation does not constitute defending a claim. Church defendant agreed that "The first time I met him . . . he expressed that he was—his role was to manage an investigation to try to find out what happened." Filing No. 81-2, VonSpreckelsen Dep. 28:2-17, page #ID 860; Filing No. 81-4, Ex. E, Kenneth Spray Dep. 65:17-21. Kenneth Spray was initially the primary contact for the church with Rauterkus. The court finds there is no material evidence at dispute here. The Greens contend that Church Mutual assumed the defense. However, the court finds the evidence is minimal in this regard. It certainly does not create a material fact for trial nor is there any clear and convincing evidence presented to support the argument that the insurer assumed or continued the defense.

With regard to the third factor, some type of harm, the Greens argue that they need only show assumption of complete control of the matter. *See First United, 496 N.W.2d at 482* (citing *National Union Fire Ins. Co. v. Bruecks*, 139 N.W.2d 821 (Neb. 1966) (12 months of control sufficient when coupled with a lack of a reservation of rights agreement sufficient to show prejudice as a basis for urging estoppel)). The Greens contend this behavior by counsel and Church Mutual Insurance occurred for over 22

months. In this regard, Church Mutual Insurance notes that the *First United* case relied on cases from other jurisdictions that utilized the estoppel defense only in cases where there was a lawsuit without a reservation of rights or failure to inform the insured that there would be no defense for the lawsuit that commenced. *First United*, 496 N.W.2d at 480. In this case, argues Church Mutual Insurance, there was no lawsuit or an insurance company defending a lawsuit or a settlement demanding money until August 19, 2011. However, the Greens make no showing that Church Mutual Insurance controlled this matter for the said period of time. In fact, no claim had been filed with Church Mutual Insurance till the fall of 2011. There were a number of months where there is no evidence of any activity.

The court finds there is no clear and convincing evidence or material facts in dispute to support the Greens' claims on any of their estoppel issues. There is no evidence that Church Mutual Insurance said coverage existed. There is no evidence that the insured, the defendant church, was ever harmed by anything done by Church Mutual Insurance. There is no evidence that Rauterkus ever discussed insurance coverage with the church. In fact, Rauterkus contends he has never even done insurance coverage work and did not do so for Church Mutual Insurance. There is no showing that Church Mutual Insurance ever had complete control of this matter. The church had its own attorney at some point, and the Greens had an attorney from the beginning. There is no evidence of false representations or concealment of material facts; no knowledge that the Greens were acting on such facts; and no injury as a result. It is clear that some discussion occurred about whether the Greens could obtain workers' compensation benefits in this case. It is unclear the exact date of the

knowledge that workers' compensation would not be available, but it appears there was that possibility until the statute of limitations ran. The Greens have not presented sufficient evidence, much less clear and convincing evidence, that these factors exist. The inferences that the Greens ask this court to draw from the evidence are tenuous and do not create material facts for trial.

THEREFORE, IT IS ORDERED:

1. Plaintiff's motion in limine, Filing No. 68, is granted.

2. Plaintiff's motion for summary judgment, Filing No. 79, is granted and this case is dismissed.

3. Defendants' objection, Filing No. 82, is overruled.

4. A separate judgment will be entered in conjunction with this Memorandum and Order.

Dated this 25th day of February, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge